UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAUL LEBLANC                              CIVIL ACTION

VERSUS                                    NUMBER: 11-0593

BURL CAIN, WARDEN                         SECTION: "B"(5)


## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Paul Leblanc, and the State's memorandum in response thereto. (Rec. docs. 1, 20). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that the instant petition be dismissed with prejudice.

## I.  PROCEDURAL HISTORY[1]

Petitioner, Paul Leblanc, a state prisoner presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was charged by bill of information with possession of

---

[1]A portion of the procedural history was taken from the Louisiana First Circuit Court of Appeal's opinion, State v. Leblanc, 897 So.2d 736 (La. App. 1 Cir. 2004).

cocaine, a violation of La. R.S. 40:967C. Petitioner entered a plea of not guilty. On October 28, 2003, following two mistrials, petitioner was found guilty as charged via a jury trial in the Twenty-Second Judicial District Court for the Parish of St. Tammany.[2] The State instituted habitual offender proceedings against petitioner. Prior to the habitual offender adjudication, the trial court sentenced petitioner to a term of five years at hard labor for his conviction of possession of cocaine. On January 12, 2004, the trial court, following a hearing, adjudicated petitioner to be a fourth felony offender. (St. rec., vol. 2, pp. 340-350). Specifically, the court determined that in addition to the instant possession of cocaine conviction, petitioner had three prior convictions:

> 1) A conviction for burglary of a building on September, 27, 1985, in Criminal District Court of Jefferson County, Beaumont, Texas;
>
> 2) Convictions for possession of marijuana, purse snatching, and theft over $500 on June 22, 1993, in the 22nd Judicial District Court in St. Tammany Parish;[3]
>
> 3) A conviction for possession of cocaine on February 24, 1997 in the 262nd District Court in Houston, Texas.

---

[2]A copy of the jury's guilty verdict is contained in the State rec., vol. 1, p. 142.

[3]The trial court, for purpose of determining petitioner to be a multiple offender, treated his three convictions on June 22, 1993, as one predicate offense.

See <u>Leblanc</u>, 897 So.2d at 741.

On December 17, 2004, the Louisiana First Circuit Court of Appeal affirmed petitioner's possession of cocaine conviction. <u>State v. Leblanc</u>, 897 So.2d 736 (La. App. 1 Cir. 2004). The state appellate court, however, determined that the state trial court erred with respect to petitioner's habitual offender adjudication and sentencing.

With regard to his habitual offender adjudication, the Louisiana First Circuit determined that the trial court improperly used a 1985 burglary conviction arising from the Criminal District Court of Jefferson County, Beaumont, Texas, to enhance petitioner's sentence. <u>Id</u>. at 742. This error, however, did not result in a change in petitioner's fourth felony offender status. The Louisiana First Circuit explained:

> [D]espite the insufficiency of defendant's Texas burglary conviction to be used as a predicate offense, there is still a basis in the record to support the trial court's adjudication of defendant as a fourth felony habitual offender. The trial court treated the three guilty pleas entered on June 22, 1993 in St. Tammany Parish as one conviction. This was error. The Louisiana Supreme Court recently held that there is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date based on unrelated conduct. <u>State v. Johnson</u>, 2003-2993, p. 17-18 (La. 10/19/04), 884 So.2d 568, 578-579 (overruling <u>State ex rel. Mims v. Butler</u>, 601 So.2d 649, 650 (La. 1992) (on rehearing)).

<u>Id</u>.

Based upon its finding that there was no evidence reflecting that the trial court had considered applicable guidelines in sentencing petitioner, the court vacated petitioner's sentence and remanded the matter for resentencing. Id. at 743. On January 18, 2005, pursuant to the appellate court's remand, the trial court resentenced petitioner to life imprisonment. (St. rec., vol. 2 of 7, pp. 392-397). On April 29, 2005, the Louisiana Supreme Court denied petitioner's writ application. State v. Leblanc, 901 So.2d 1063 (La. 2005).[4]

On July 26, 2005, the state district court granted petitioner an out-of-time appeal. (St. rec., vol. 2 of 7, p. 381). On June 9, 2006, the Louisiana First Circuit Court of Appeal affirmed petitioner's sentence and conviction. State v. Leblanc, 931 So.2d 563 (Table), 2005-2344 (La. App. 1 Cir. 2006) (unpublished opinion).[5] On January 26, 2007, the Louisiana Supreme Court denied petitioner's writ application, State v. Leblanc, 948 So.2d 165 (La. 2007), and on March 23, 2007, denied petitioner's application for reconsideration. State v. Leblanc, 951 So.2d 1087 (La. 2007).

--------

[4]Thereafter, petitioner filed a writ of certiorari with the United States Supreme Court which was denied on October 3, 2005. Leblanc v. Louisiana, 546 U.S. 905 (2005).

[5]A copy of the state appellate court's unpublished June 9, 2006 opinion is contained in the St. rec., vol. 3.

Following the conclusion of his direct appeal proceedings, petitioner sought state post-conviction relief. On October 16, 2009, the state district court issued a Judgment With Reasons denying petitioner post-conviction relief. <u>Leblanc v. Cain</u>, Docket No. 357107 (22nd Judicial District Court Oct. 26, 2009) (unpublished opinion).[6] On May 10, 2010, the Louisiana First Circuit Court of Appeal likewise denied petitioner post-conviction relief. <u>State v. Leblanc</u>, Number 2010-KW-0186 (La. App. 1 Cir. 2010) (unpublished opinion).[7] On February 4, 2011, the Louisiana Supreme Court denied petitioner's writ application, <u>State v. Leblanc</u>, 57 So.3d 318 (La. 2011), and on April 8, 2011, denied petitioner's application for rehearing. <u>State v. Leblanc</u>, 61 So.3d 673 (La. 2011).

On March 16, 2011, prior to the state supreme court's adjudication on his application for reconsideration, petitioner, through counsel, filed the instant habeas corpus action. Petitioner raises the following two claims: 1) the retroactive application of a state judicial reinterpretation of the habitual offender statute violated the Ex Post Facto Clause resulting in a

---

[6]A copy of the district court's unpublished opinion is contained in the St. rec., vol. 3.

[7]A copy of the state appellate court's unpublished opinion is contained in the St. rec., vol. 3.

denial of his right to due process; and, 2) he received ineffective assistance of counsel. In its opposition (rec. doc. 20, pp. 3 and 4), the State concedes, and this Court's review of the record confirms, that petitioner's habeas application is timely and that petitioner has exhausted his state court remedies. Accordingly, this Court shall proceed to address the merits of petitioner's claims following its review of the applicable facts and standard of review.

## II. **FACTS**[8]

On September 23, 2002, Deputy Gil Fremin of the St. Tammany Parish Sheriff's Office was dispatched to Spell's Trailer Park between midnight and 1:00 a.m. Deputy Fremin was instructed that defendant might be on the scene, or in a gray truck leaving the area. As Deputy Fremin turned onto the gravel road of the trailer park, he observed a gray truck traveling away at a high rate of speed. Deputy Fremin activated the lights and siren of his unit and stopped the truck. When the truck stopped, defendant got out of the passenger side and yelled, "Why you stopped us?" Deputy Fremin described defendant as very loud, vulgar, and hostile. At the time defendant was wearing only a pair of shorts. Based on

---

[8]The relevant facts are as found by the state appellate court in the opinion rendered in connection with petitioner's direct appeal. See State v. Leblanc, 897 So.2d 736 (La. App. 1 Cir. 2004).

defendant's behavior Deputy Fremin believed defendant was intoxicated; but when he could not detect the smell of alcohol, he suspected defendant was under the influence of narcotics.

Deputy Fremin handcuffed defendant, performed a quick pat-down for weapons, and placed him in the backseat of the caged police unit. Defendant continued to act belligerently and began to bang his head against the window of the unit. Deputy Fremin told defendant several times to calm down, but defendant's belligerent behavior persisted. Concerned that defendant was going to harm himself, Deputy Fremin opened the back door to the unit and sprayed defendant with pepper spray, which immediately calmed defendant.

After defendant calmed, Deputy Fremin removed him from the unit and walked him to a nearby hose to wash the pepper spray from defendant's face. Deputy Emile Lubrano arrived and performed a second pat-down while defendant was calm and no longer physically combative. During this pat-down, Deputy Lubrano discovered a crack pipe in defendant's right front pocket. Defendant was arrested for possession of cocaine and drug paraphernalia. Laboratory testing later performed on the crack pipe revealed cocaine residue.

### III. **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus

legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(2); <u>see</u> <u>also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## IV. <u>ANALYSIS</u>

### A. Violation of Ex Post Facto Clause

On May 26, 1992, in <u>State ex rel. Mims v. Butler</u>, 601 So.2d 649 (La. 1992), the Louisiana Supreme Court determined that under Act 688 of 1982 amending Louisiana's Habitual Offender Law, LSA-R.S. 15:529.1, multiple convictions occurring on the same date could be counted as only one predicate offense for habitual offender purposes, even when the convictions stemmed from separate and distinct criminal episodes.  On October 19, 2004, in <u>State v. Johnson</u>, 884 So.2d 568 (La. 2004), the Louisiana Supreme Court changed course, overruling <u>Mims</u> and determining that under Act 688 of 1982, multiple convictions occurring on the same date could be counted as multiple predicate offenses for habitual offender purposes.

Petitioner argues that the application of the rule

enunciated in <u>Johnson</u> to habitual offender adjudications associated with crimes committed before October 19, 2004, represents a violation of the Ex Post Facto Clause and, as such, a violation of his right to due process.

The above argument has been soundly rejected. In <u>Butler v. Cain</u>, 327 Fed. Appx. 455, 456 (5th Cir. 2009), the Fifth Circuit, relying on <u>Rogers v. Tennessee</u>, 532 U.S. 451, 460 (2001), distinguished between a change in Louisiana's Habitual Offender Law attributable to a legislative amendment as opposed to a change in the law attributable to a judicial re-interpretation. In a situation such as this, where the change is attributable to a judicial re-interpretation, due process limitations are implicated only when the new interpretation represents an "'unexpected and indefensible'" change when compared "'to the law which had been expressed prior to the conduct in issue.'" <u>Janecka v. Cockrell</u>, 301 F.3d 316, 324 n.11 (5th Cir. 2002), <u>quoting</u> <u>Rogers</u>, 532 U.S. at 462.

The Fifth Circuit concluded that the Louisiana Supreme Court's reinterpretation of LSA-R.S. 15:529.1, by virtue of its decision in <u>Johnson</u>, <u>supra</u>, did not represent an "unexpected and indefensible" change, reasoning:

> The plain language of the statute does not contain a sequencing requirement [prohibiting a court from counting

> multiple convictions occurring on the same date as
> multiple predicate offenses]. LA.REV.STAT.ANN. §15:529.1.
> The statute was not amended during this time period
> between the Louisiana Supreme Court's decisions in <u>State</u>
> <u>ex rel. Mims v. Butler</u>, 601 So.2d 649, 650 (La. 1992),
> <u>overruled by State v. Johnson</u>, 884 So.2d 568 (La. 2004),
> and <u>Johnson</u>, 884 So.2d at 573-579. In <u>Johnson</u>, the
> Louisiana Supreme Court merely reinterpreted the effect
> of a 1982 amendment to the statute.

<u>Butler</u>, 327 Fed. Appx. at 457.

In addition to his claim that he was denied due process, petitioner asserts that state courts are misapplying Act 218 of 2005, pursuant to which LSA-R.S. 15:529.1(B) was reenacted to read as follows:

> It is hereby declared to be the intent of this Section
> that an offender need not have been adjudged to be a
> second offender in a previous prosecution in order to be
> charged as and adjudged to be a third offender, or that
> an offender has been adjudged in a prior prosecution to
> be a third offender in order to be convicted as a fourth
> offender in a prosecution for a subsequent crime.
> Multiple convictions obtained on the same date prior to
> October 19, 2004, shall be counted as one conviction for
> the purpose of this Section.

According to petitioner, because his case was on direct appeal when the legislature, in June, 2005, pursuant to Act 218 of 2005, amended the habitual offender statute, he should get the benefit of the amendment. As such, his multiple convictions on June 22, 1993, should only count as one predicate offense. Thus, the Louisiana First Circuit, in finding him to be a fourth-felony offender rather

11

than a third-felony offender, erred in its application of Act 218 of 2005.

Petitioner's argument in this regard is without merit for the purpose of attaining habeas relief. It is well-established that a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). In Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011), the Supreme Court found that the Ninth Circuit erred in "granting habeas relief based upon its conclusion that the state courts had misapplied [state law]...." The Court provided:

> The habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' " Wilson v. Corcoran, ... 131 S.Ct. 13, 15, 178 L.Ed.2d 276 (2010) (per curiam) (quoting 28 U.S.C. § 2254(a)). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' " Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

Id.

## B. Ineffective Assistance of Counsel

Petitioner claims that counsel was ineffective in the following respects:

1)Counsel called a damaging and irrelevant witness to
   testify at trial;

2) Counsel failed to prepare for and control petitioner's
   testimony;

3) Counsel failed to request continuance or follow up
   when new testimony was presented at petitioner's
   third trial;

4) Counsel failed to present mitigating evidence in
   connection with petitioner's sentencing.

The seminal Supreme Court decision regarding ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other

prong.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (citing <u>Strickland</u>, 466 U.S. at 690).  To prove prejudice under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

### 1) Damaging and irrelevant witness

Petitioner claims that counsel was ineffective for calling Jed Passman as a witness.  A review of Passman's testimony reflects that he employed petitioner at the time of petitioner's arrest.  Passman stated that he had a tree-cutting business and that petitioner had been "climbing trees with me for a while." (St. rec., vol. 2, pp. 279 and 280).  In fact, Passman stated that on the day in question, petitioner "had been with me all day." (St. rec., vol. 2, p. 280).

Petitioner asserts that Passman's testimony was not beneficial to his defense, pointing out that Passman did not even provide him with an alibi.  (Rec. doc. 3, supporting memorandum, p.

24). Petitioner's assessment in this regard is, for the most part, correct. Other than establishing petitioner's relatively lengthy employment history, Passman's testimony was, as petitioner asserts, "not...helpful". (Rec. doc. 3, supporting memorandum, p. 25).

While lamenting the uselessness of Passman's testimony, petitioner claims that he was prejudiced by said testimony. Petitioner points to the fact that Passman appeared in court wearing prison garb and, as established on cross-examination, had three felony theft convictions which he seemingly did not understand. <u>See</u> Rec. doc. 3, pp. 22-24.

Based upon the above, it appears that petitioner "wants to have his cake and eat it too". If Passman's testimony was irrelevant, how can petitioner validly claim he was prejudiced by its unbelievability. He cannot and, as such, he has failed to satisfy the prejudice prong of <u>Strickland's</u> two-part test.

**2) Preparation for and control of testimony**

Petitioner charges that counsel failed to prepare him for and control his trial testimony. Petitioner admits that counsel advised him not to take the stand. However, petitioner complains that after he did not heed counsel's advice and testified, counsel allowed him to incriminate himself.

In support of his claim, petitioner points to his

testimony on direct examination wherein he informed that the reason police stopped him was because "my roommate called and said I raped her". (St. rec., vol. 2, p. 286). Later, petitioner testified that Officer Fremin, rather than listening to him, stated: "[S]hut up. She said you raped her...." (St. rec., vol. 2, p. 289).

When the above testimony is read in context, it is apparent that counsel bears no responsibility. Both of petitioner's comments regarding the rape were not elicited by defense counsel. Instead, they were in response to questions as to what occurred after petitioner left the trailer park in a friend's truck. Counsel was asking petitioner what occurred once he was stopped by police in an attempt to show that the arresting officers had manhandled him. In particular, petitioner's hearsay testimony regarding what Officer Fremin said to him was in response to counsel's narrow question: "Did they spray you?" (St. rec., vol. 2, pp. 286 and 289).

Petitioner also complains that counsel was ineffective in allowing petitioner to mention "that this was his third trial (R.p. 288), and [going] through his 'extensive record' and prior convictions. (R.p. 290-291)." (Rec. doc. 3, supporting memorandum, p. 26).

Petitioner's remark that this was his third trial, the

third time the State was trying to convict him on the charge of possession of cocaine, cannot be considered prejudicial. Quite to the contrary. It was directly after petitioner's testimony in this regard that the assistant district attorney objected, stating that petitioner "obviously has an agenda." (St. rec., vol. 2, p. 288). Thus, the State clearly found petitioner's remark, that this was the third time the State was trying to convict him, to be prejudicial not to petitioner, but rather, to the State. This Court agrees.

As for defense counsel's questioning petitioner about his prior convictions, this is the general practice of defense counsel when a client, with a criminal record, wants to testify at trial. The rationale is that it is better for the jury to hear of the defendant's past convictions from the defendant on direct examination, giving the appearance that he has nothing to hide, rather than learning of past violations pursuant to a rigorous cross-examination from the prosecutor. The Court finds that counsel was not deficient in this regard.

Finally, petitioner argues that it is "not clear that [he] was instructed in his Fifth Amendment rights before taking the stand...." (Rec. doc. 3, p. 27). Petitioner, however, has the burden of proving that counsel was ineffective in failing to advise

him of his Fifth Amendment rights.  His claim that it is "not clear" if counsel performed his duty in this regard is insufficient to satisfy petitioner's burden of proof.

Additionally, based upon petitioner's testimony, it appears likely that counsel did, in fact, advise petitioner of his Fifth Amendment right not to testify and urged him to exercise that right.  Specifically, petitioner stated:  "I'm up here today, I know I'm probably going to crucify myself.  My lawyer thinks I'm going to crucify myself, but I feel like ya'll need to know." (St. rec., vol. 2, p. 285).

Based upon the above, the Court finds that petitioner has failed to satisfy his burden of proof under Strickland.

### 3) New testimony at third trial

Petitioner argues that counsel was defective in failing to follow up on "new" testimony which was presented in petitioner's third trial.  The transcript reflects that defense counsel asked petitioner if he had heard Officer Fremin testify before and petitioner responded in the affirmative, stating: "Three times, three different stories, too."  (St. rec., vol. 2, p. 291).  At that point a bench conference was held.

As the transcript reflects, during this bench conference it was discussed that the prosecutor, in this third trial, may have

elicited testimony from Officer Fremin which he did not elicit in the first two trials. Further, the State put on an additional witness, Officer Lubrano, who had not offered testimony in the first two trials. Petitioner has not provided the Court with excerpts of prior trial testimony by Fremin which establish that his testimony, in fact, differed between trials. Nevertheless, it is argued that counsel was ineffective for allowing Fremin to vary his testimony from that given in a preceding mistrial. (St. rec., vol. 2, pp. 292-293).

Defense counsel's failure to "follow up" on this alleged "new" testimony has not been shown to have prejudiced petitioner. As the trial court noted, this "new" testimony could not be said to reflect a changed version of events. Instead, the "new" testimony may have been attributable to additional questions posed to Officer Fremin by the prosecution. Specifically, the trial court reasoned: "[I]f nobody asked [Officer Fremin] the question the last time, then he wouldn't have testified to it. So that [i.e., the new testimony] doesn't make any difference." (St. rec., vol. 2, p. 293). Furthermore, without prior trial testimony excerpts to define the scope of the problem, which petitioner has had ample time to obtain, this Court will not assume a problem exists.

As for the fact that the State put on an additional

witness, Officer Lubrano, in this third trial, such a development is not out of the ordinary. In a situation where the prosecution is initially unsuccessful in securing a conviction, it is not unusual to change tact, calling new witnesses or not calling prior witnesses in an effort to successfully secure a conviction on the second try or, in this case, the third try.

Thus, the Court finds that petitioner has failed to satisfy his burden of proof. This claim of ineffectiveness is without merit.

### 4) Mitigating evidence

Petitioner argues that counsel was ineffective in failing to present the trial court with mitigating evidence which, due to counsel's deficiency, resulted in the court's imposition of a life sentence. The mitigating evidence which petitioner suggests would have swayed the trial court to impose a lesser sentence is that petitioner had no "history of offenses involving weapons, and had no convictions for drug distribution (only possession), which verifies his claim of addiction." (Rec. doc. 3, p. 29). Petitioner points to further mitigating evidence, in the form of a letter from his brother, Allen Leblanc, which counsel should have presented in order to show "that Mr. Leblanc had the support of his family in his struggle against his addiction." (Rec. doc. 3, p.

29).

This Court finds that petitioner has failed to show how he was prejudiced by counsel's alleged deficiency in failing to present the above-described mitigating evidence.  First, the trial court was well-aware of the fact that petitioner had no history of crimes involving weapons and had no convictions for drug distributions.  The court examined petitioner's prior convictions before imposing a life sentence.  Second, the fact that petitioner, in connection with his drug addiction, had the support of his family is not unusual and may generally be presumed.  There is no evidence to suggest that a letter from petitioner's brother to this effect would have favorably influenced the judge to the degree that would have prevented her from imposing a life sentence. Accordingly;

## **RECOMMENDATION**

It is hereby **RECOMMENDED** that the instant application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[9]

New Orleans, Louisiana, this __7th__ day of ___February___, 2012.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[9]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.